## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

JEVIN WILLIAMS,

    Plaintiff,

    v.

DANIEL BIGGS, SOUTHEAST               Case No.
LOUISIANA FLOOD PROTECTION
AUTHORITY-EAST, LAKEFRONT
MANAGEMENT AUTHORITY, CITY OF
NEW ORLEANS, KERRY NAJOLIA,
DONALD JUNEAU, ALBERT PELLITTERI,
MICHAEL BRENCKLE, BRUNO MASON,
VANCE BIENIEMY, ABC INSURANCE
COMPANY, and XYZ INSURANCE
COMPANY,

    Defendants.

# COMPLAINT

## INTRODUCTION

1.    Every year Black men are subjected to police violence. After the beatings, the shootings, and the killings by law enforcement officers, various justifications are advanced for the officers' decisions to use force against Black men—"he posed a threat;" "he disobeyed orders;" "he was running away." We are left to untangle these explanations: discarding post hoc excuses, identifying the factual circumstances during which an officer used force against Black lives, and holding accountable those officers who commit unreasonable and inexcusable violence.

2.    This case is about a white officer who opened fire on two Black men because they were leaving the scene of an alleged misdemeanor driving offense that the officer had not even witnessed.

3.      On February 16, 2020, after being dispatched on a report that cars were doing donuts in a parking lot, Orleans Levee District Police Department (OLD-PD) Officer Daniel Biggs stopped his vehicle in front of the parking space of the car that Jevin Williams and Glendale Hampton were getting into. Glendale Hampton, the driver, attempted to leave the parking lot, turning his car immediately to the right, past the police vehicle, and heading toward the lot's exit. In that moment, Officer Biggs decided that the lives of Glendale Hampton and his passenger, Jevin Williams, were Biggs' to take. Officer Biggs fired four shots into the car at Jevin Williams and Glendale Hampton, hitting them both.

4.      Jevin Williams and Glendale Hampton survived, despite the failure of Officer Biggs to provide aid. After the shooting, Officer Biggs did not approach the immobilized vehicle to check on the condition of the men he had shot at. Officer Biggs never called for an ambulance. Williams lay bleeding on the asphalt; Hampton sat wounded in the driver's seat.

5.      Officer Biggs waited three days, and then, with his attorney, gave a statement claiming that he shot Jevin Williams and Glendale Hampton because he thought he was going to be hit by Hampton's car.

6.      But Officer Biggs was never in danger of being hit by Hampton's car. And Officer Biggs could not have reasonably perceived that he was in danger of being hit by the car. Officer Biggs opened fire only after the car had turned slowly past his police vehicle, heading toward the parking lot exit. Officer Biggs used excessive and deadly force against two Black men simply because they drove away from him.

7.      After being shot by Officer Biggs that day, Williams endured the trauma of extensive medical treatment, severe and ongoing physical pain, emotional distress, unaffordable

2

medical bills, and lost work and income. Williams continues to live with Officer Biggs' bullet still lodged in his body.

8.    This action seeks redress for the violations of the rights guaranteed to Williams by the Fourth and Fourteenth Amendments to the United States Constitution, as well as violations of state law by Officer Biggs, OLD-PD, the Southeast Louisiana Flood Protection Authority-East, the Lakefront Management Authority, the City of New Orleans, and other employees of these entities. Williams, by and through his attorneys, seeks all relief as detailed throughout this complaint and as requested below.

## NATURE OF THE ACTION

9.    Williams brings this action under 42 U.S.C. § 1983 for deprivation of his rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

10.    Williams also seeks redress of the assault, battery, and intentional infliction of emotional distress perpetrated on him by Defendants, pursuant to LA. CODE CIV. PROC. art. 2315.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over Plaintiff's claims for violations of the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983 pursuant to 28 U.S.C. §§ 1331 and 1343. This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 as the state law claims are so related to Plaintiff's federal claims as to form part of the same case or controversy.

12.    Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(1).

## PARTIES

13.    Plaintiff Jevin Williams is a resident of Orleans Parish, Louisiana. Williams was shot by OLD-PD Officer Biggs.

14.     Defendant Daniel Biggs is an officer with the Orleans Levee District Police Department. He is a person of the full age of majority and a resident of Orleans Parish, Louisiana. Biggs is sued in his individual capacity. Biggs used excessive force against Jevin Williams by shooting into Glendale Hampton's vehicle four times and hitting Williams in the left side of his torso as he sat in the passenger seat. Biggs seized Hampton's car and its inhabitants, Hampton and Williams, for the alleged offense of reckless operation. At all times described herein, Biggs was acting under color of law and in the course and scope of his employment.

15.     Southeast Louisiana Flood Protection Authority-East (SLFPA-E) is a political entity capable of suing and being sued. SLFPA-E is a flood protection authority comprised of the Jefferson Parish Levee District, Orleans Levee District, and Lake Borgne Basic Levee District. The SLFPA-E directly employs a superintendent of police security whose responsibility it is to supervise the police security personnel of all levee districts within its territorial jurisdiction, including the Orleans Levee District. OLD-PD authority is derived from a grant by the SLFPA-E.

16.     The Lakefront Management Authority, formerly Orleans Levee District Non-Flood Asset Authority, is a political subdivision capable of suing and being sued. Lakefront Management Authority has full corporate power to manage, control, regulate, operate, and maintain any non-flood protection facility, improvement asset, or function within a levee district within the jurisdiction of the flood protection authority, including OLD-PD. OLD-PD authority is derived from a grant by the Lakefront Management Authority.

17.     The City of New Orleans, is a political entity capable of suing and being sued. The City of New Orleans is the entity responsible for ensuring the safety, welfare, and protection of members of the public within the City, including the areas patrolled by OLD-PD, pursuant to its police powers. Further, the City of New Orleans has established cooperative patrol areas with

OLD-PD, and the New Orleans Police Department (NOPD) is charged with investigating all serious uses of force by OLD-PD.

18.     Kerry Najolia, a person of full age of majority and a resident of Jefferson Parish, Louisiana, is sued in his individual and official capacities, as the superintendent of the Levee Police for the Southeast Louisiana Flood Protection Authority. At all times described herein, Najolia was responsible for the hiring, training, supervision, discipline, and control of appropriate staff to carry out the functions of the police departments under his command. He was also responsible for the supervision, administration, policies, practices, customs, and operations of OLD- PD. He was and is a final policymaker, and at all pertinent times was acting under color of law. He is liable both directly and vicariously for the actions complained of herein.

19.     Donald Juneau, a person of full age of majority and a resident of St. Charles Parish, Louisiana, is sued in his individual capacity. Juneau is the Captain of Administration and Operations and is the Internal Affairs Commander of OLD-PD. At all times described herein, Juneau was responsible for hiring, training, supervision, oversight of internal investigations, discipline, and control of appropriate staff to carry out the functions of the police departments under his command, including OLD-PD and Officer Biggs. He was also responsible for the supervision, administration, policies (and enforcement thereof), practices, customs, and operations of OLD- PD. He was and is a final policymaker, and at all pertinent times was acting under color of law. He is liable both directly and vicariously for the actions complained of herein.

20.     Albert Pellitteri, a person of full age of majority and a resident of St. Tammany Parish, Louisiana, is sued in his individual capacity. Pellitteri is a Lieutenant of OLD-PD. On information and belief, Lt. Pellitteri was and is the training coordinator for OLD-PD. At all times described herein, Pellitteri was responsible for the training, supervision, discipline, and control of

OLD-PD officers, including Officer Biggs. He was also responsible for the supervision, administration, policies, practices, customs, and operations of OLD- PD. He was and is a final policymaker, and at all pertinent times was acting under color of law. He is liable both directly and vicariously for the actions complained of herein.

21.     Michael Brenckle, a person of full age of majority and a resident of Jefferson Parish, Louisiana, is sued in his individual capacity. Brenckle is the Captain of OLD-PD. At all times described herein, Brenckle was responsible for the hiring, training, supervision, discipline, and control of appropriate staff to carry out the functions of the police department under his command, including Officer Biggs. He was also responsible for the supervision, administration, policies, practices, customs, and operations of OLD- PD. He was and is a final policymaker, and at all pertinent times was acting under color of law. He is liable both directly and vicariously for the actions complained of herein.

22.     Bruno Mason, a person of full age of majority and a resident of Orleans Parish, Louisiana, is sued in his individual capacity. Mason is a Lieutenant of OLD-PD. On information and belief, Lieutenant Mason was commander of Platoon B, the organizational unit Officer Biggs operated under. At all times described herein, Mason was responsible for the training, supervision, discipline, and control of those officers under his command, including Officer Biggs. He was also responsible for the supervision, administration, policies, practices, customs, and operations of OLD- PD. He was and is a final policymaker, and at all pertinent times was acting under color of law. He is liable both directly and vicariously for the actions complained of herein.

23.     Vance Bieniemy, a person of full age of majority and a resident of Orleans Parish, Louisiana, is sued in his individual capacity. Bieniemy is a Sergeant of OLD-PD. On information and belief, Sergeant Bieniemy was a sergeant for Platoon B, the organizational unit Officer Biggs

operated under. At all times described herein, Bieniemy was responsible for the training, supervision, discipline, and control of those officers under his command, including Officer Biggs. At all pertinent times Bieniemy was acting under color of law. He is liable both directly and vicariously for the actions complained of herein.

24.     ABC Insurance Company, is a foreign insurance corporation authorized to do and doing business in the State of Louisiana, which upon information and belief, at all times mentioned herein, provided Defendant SLFPA-E and its named Defendant Employees with a policy of liability insurance for the acts complained of herein.

25.     XYZ Insurance Company, is a foreign insurance corporation authorized to do and doing business in the State of Louisiana, which upon information and belief, at all times mentioned herein, provided Defendant Lakefront Management Authority and its named Defendant Employees with a policy of liability insurance for the acts complained of herein.

## FACTUAL BACKGROUND

### I.    Officer Biggs' Unjustified Shooting of Jevin Williams

26.    Plaintiff incorporates by reference the allegations previously set forth in this complaint.

27.    Sunday, February 16, 2020, was Jevin Williams' 25th birthday.

28.    That afternoon, Williams and a friend, Glendale Hampton, were at the lakefront (Lake Ponchartrain). Hampton was driving his silver Camaro. Along with some other vehicles, they were doing donuts in a parking lot off Lakeshore Drive near Franklin Avenue.

29.    Around 2:40 p.m., a man who said his name was "Raymond," called in a complaint that three cars were doing donuts in the parking lot: a green Monte Carlo, a silver Camaro, and a red Mustang.

30.    The complaint was sent out by dispatch as a Signal 99 – reckless operation of a vehicle. This was a Code 2 dispatch, which is the OLD-PD policy designation for signals requiring a prompt but not emergency response.

31.    Reckless operation of a vehicle is a municipal infraction under Section 154-382 of the New Orleans Code of Ordinances, and is a state misdemeanor under Louisiana Revised Statutes 14:99. Both laws define reckless operation as "the operation of any motor vehicle in a criminally negligent or reckless manner." If charged as a state misdemeanor pursuant to La. R.S. 14:99, punishment for reckless operation is limited to a fine of not more than $200, or imprisonment for not more than 90 days, or both.

32.    At approximately 2:51 p.m., OLD-PD Officer Biggs was dispatched in response to the complaint of reckless operation.

33.     When Officer Biggs arrived at the parking lot moments later, he did not observe any vehicles being operated recklessly. Officer Biggs did not recall being given any vehicle descriptions. Officer Biggs had not learned anything that would cause him to believe that anyone associated with the complaint posed any threat of violence or possessed felonious intent.

34.     The oblong parking lot runs parallel to Lakeshore Drive and is comprised of three rows of parking spaces with a loop for vehicle traffic. The parking lot is accessible by two entrances/exits, one at each end connecting the lot to Lakeshore Drive.

35.     Officer Biggs entered the parking lot from Lakeshore Drive through the entrance closest to Franklin Avenue. He drove toward the rear of the lot, following the loop for vehicle traffic between the two rear rows of parking spaces (farthest from Lakeshore Drive) before circling around to drive along the front row of parking spaces. Neither the lights nor siren on Biggs' marked police vehicle were activated.

36.     Officer Biggs stated that he saw Hampton get into the driver's seat and Williams get into the passenger seat of Hampton's silver Camaro. Officer Biggs also stated he saw a driver enter a green car next to the Camaro. The green car and the Camaro were parked in the front row of parking spaces and were "rear-end parked" such that the cars had been backed into the spaces with the front ends of the cars facing toward the lane for traffic.

37.     Officer Biggs stopped in the parking lot's lane of traffic in front of the green car and Hampton's silver Camaro, with the front of his police vehicle facing toward Franklin Avenue. Biggs' vehicle was partially blocking the Camaro. As Biggs stopped his vehicle, he activated the overhead lights. Biggs did not activate his siren.

38.     Biggs intended to prevent the silver Camaro and the green car from leaving the parking lot.

39.     Hampton angled his car to the right (in the direction away from Franklin Avenue), exiting the parking space and turning his car past the rear of Biggs' vehicle.

40.     As the front of Hampton's Camaro cleared the rear of Biggs' vehicle and continued its path toward the exit of the parking lot, Biggs fired four shots into the car. Multiple shots entered the car through the driver's side window. The driver's side window was broken out. The top corner of the windshield on the driver's side also was left with two bullet holes.

41.     The passenger, Williams, sustained one gunshot wound. The bullet entered his left side and remained lodged in his body. The driver, Hampton, sustained one gunshot wound. The bullet entered his left, rear upper arm, fracturing the proximal humerus, and shattering and obliterating the humerus.

42.     After Officer Biggs shot Hampton and Williams, Hampton lost control of the vehicle. The vehicle came to rest against the concrete divider in the middle of the parking lot.

43.     Williams collapsed on the ground immediately outside the car on the passenger side. Hampton sat wounded in the driver's seat. Hampton and Williams yelled for help, saying they had been shot.

44.     For several minutes, Officer Biggs remained by his police vehicle, neither giving assistance to Williams or Hampton who were bleeding from the gunshot wounds, nor checking to see if he had killed either of them.

45.     Officer Biggs did not radio for emergency medical service (EMS).

46.     Instead, Officer Biggs put out a Signal 108 relative to Officer Needs Assistance.

47.     Several minutes later, a responding OLD-PD officer arrived on scene and radioed for EMS. Only then were ambulances dispatched to take Hampton and Williams to University

Medical Center for treatment. The request was made as a Code 3, which is the OLD-PD policy designation requiring an emergency response.

48.     After Williams and Hampton were shot, multiple cars left the parking lot.

49.     Officer Biggs was not injured at all, and his police uniform similarly showed no signs of damage.

50.     Officer Biggs' vehicle did not sustain any damage.

51.     Neither Officer Biggs nor his vehicle were contacted by Hampton's Camaro at any point.

52.     Tire tracks left behind by the silver Camaro indicate that the car never moved in a straight direction forward as it exited the parking space. The tracks immediately curved, leading away from the police vehicle.

53.     Neither the silver Camaro nor its occupants, Hampton and Williams, posed a threat to Officer Biggs or to anyone else when Biggs opened fire.

54.     Officer Biggs could not have reasonably perceived that the silver Camaro was a threat to himself or to others.

55.     Following the shooting, Officer Biggs did not generate an incident report despite being the only officer present at the time of the shooting. Officer Biggs did not complete the use of force report.

56.     NOPD officers belonging to the Force Investigation Team (FIT) of the Public Integrity Bureau (PIB) arrived on scene to investigate the shooting by Officer Biggs. The criminal investigation of the officer shooting was led by Sgt. Clinton Givens. The NOPD investigation report states, in summary, that the Camaro attempted to flee around the rear of Biggs' vehicle but began to spin out and lose control; per the report, when this occurred, Officer Biggs fired multiple

shots at the Camaro as he believed the car would hit him, causing the Camaro's driver to further lose control of the car.

57.     In contrast to this account, around 8 p.m. on February 16, 2020, an arrest warrant was sought and issued for Hampton, alleging that Officer Biggs observed Hampton drive the Camaro in the direction of Biggs, as if to strike him, and seeking to charge Hampton with aggravated assault with a motor vehicle upon a peace officer pursuant to La. R.S. 14:37.6. No other alleged offenses were included. The affiant and arresting officer was Sgt. Clinton Givens, the same NOPD officer tasked with conducting the criminal investigation into Biggs' shooting of Hampton and Williams. By the time the warrant was sought, Sgt. Givens had conducted a physical inspection of the site of the shooting, including of the silver Camaro itself.

58.     Williams was not charged with any crime.

59.     Three days after the shooting, on February 19, 2020, Officer Biggs provided his first statement as to the shooting, accompanied by counsel, and after being given a Miranda warning.

60.     Williams experienced extreme physical pain and emotional distress as a result of being shot by Officer Biggs. The bullet remains lodged in Williams' torso, and Williams' physical pain and emotional distress continues to this day. Williams also experienced loss of work and income after being shot by Officer Biggs.

61.     As a result of the medical treatment he had to undergo, Williams' medical bills totaled over $19,000 between February and March 2020. Since that time, Williams has sought additional care for the physical injury inflicted by Biggs, and will require further medical follow-up and care in the future.

## II.   OLD-PD's Policy, Training, and Supervision Failures Resulted in Biggs' Unjustified Shooting of Jevin Williams

62.    Officer Biggs violated multiple OLD-PD policies when he shot Jevin Williams.

63.    Biggs violated OLD-PD Policy 9.0 "Use of Force," which prohibits the use of deadly force for the purpose of apprehending or stopping a fleeing felon.

64.    At most, Biggs had been dispatched to investigate a complaint of an alleged misdemeanor offense.

65.    Biggs also violated OLD-PD Policy 9.0 "Use of Force" by discharging a firearm in the direction of a moving vehicle without necessity of defending himself or another from harm.

66.    Then, Biggs violated OLD-PD Policy 2.19 "Arrested Persons – Handling of Injured" by failing to ensure that the people he shot, including Jevin Williams, received appropriate medical attention. He did not approach the car to check on Hampton or Williams for at least several minutes after the shooting. He did not call emergency medical services.

67.    Lastly, Biggs violated OLD-PD Policy 5.09 "Major Crime Scenes" by failing to protect physical evidence and witness statement evidence. Immediately after the shooting, two other cars also alleged to have been operated recklessly (and parked near the silver Camaro) left the scene. Biggs did not attempt to speak with the occupants of either of these cars. These cars were followed by multiple other cars leaving the parking lot. Biggs did nothing to attempt to speak to any of the occupants of these cars.

68.    Biggs' violations of these policies indicate that he did not receive adequate training on OLD-PD policies and that his superiors were so lax in their supervision of him that he was able and willing to violate OLD-PD policies, resulting in violations of Jevin Williams' constitutional rights. Law enforcement policies are meant to provide direction to an officer to effectively enforce the law without violating the constitutional rights of the people he encounters. Supervisors are

meant to ensure that such policies are understood and adhered to. Swift action to correct deviations from policy is essential to safeguard the constitutional rights of members of the public. Biggs' specific policy violations demonstrate that OLD-PD's safeguards against Biggs' unconstitutional conduct failed in multiple ways.

69.     Despite these numerous and serious violations in policy, OLD-PD did not conduct its own investigation into Biggs' shooting. Rather, the OLD-PD use of force report simply contains the scrawl "see investigative report" in the narrative section and Lt. Bruno Mason's signature.

70.     There is no indication that any investigation, counseling, disciplinary action, or re-training was taken by any of Biggs' superior officers in the aftermath of this double civilian shooting.

71.     Such a slapdash approach to investigation and corrective action appears consistent with OLD-PD's customary operation. In January 2016, the highest-ranking commander of OLD-PD was known to have confiscated suspected marijuana in the course of a traffic stop, but did not book it into evidence or document the seizure of evidence in any other way. Investigation for this conduct was not initiated until 2018, and the investigation was not completed until October 2018. Logs of complaints against OLD-PD personnel reflect investigations remaining open for months at a time. One investigation into a reserve officer for harassment notes an investigation completion date, but no start date, no disposition, and no action taken. Another investigation for violation of law was started in September 2019, but remains incomplete. Yet another investigation for lack of courtesy was received by OLD-PD's Internal Affairs Division (IAD) in August 2020, but investigation has yet to start. An investigation for adherence of law was received by OLD-PD's IAD in May 2020, but again, no investigation has started.

72.     Thus, when Officer Biggs gave his self-serving statement, he was comfortable falsely claiming that his life was in danger in order to avoid accountability for his unjustified use of force. Biggs knew that, even if his account was contradicted by physical evidence and/or other information, it would not be challenged by OLD-PD.

73.     Additionally, the supervision of Officer Biggs and others by Najolia, Juneau, Pellitteri, Brenckle, Mason, and Bieniemy was significantly hampered by the inadequate policies of OLD-PD. The Department's use of force policy, while providing a few directives (violated by Biggs in this incident as detailed above), is otherwise superficial and undetailed, and generally focuses on officer safety as the paramount consideration in the course of stops, rather than the safety of the subject(s) of the stops and the public at large. Further, OLD-PD policies invite excessive uses of force in response to non-violent behavior, including actions that do not pose an immediate threat to law enforcement officers or members of the public.

74.     SLFPA-E, Lakefront Management Authority, Najolia, Juneau, Pellitteri, Brenckle, and Mason have developed, implemented, maintained, and repeatedly failed to correct policies, customs, and practices that give rise to constitutional rights violations and that directly resulted in harm to Jevin Williams. These policies, customs, and practices include but are not limited to the following:

   a.  Developing and maintaining policies and/or customs exhibiting deliberate indifference to the constitutional rights of members of the public;

   b.  Failing to develop, maintain, and enforce policies to prevent rights violations and tortious conduct by OLD-PD officers;

   c.  Failing to adequately and properly investigate or to participate and oversee investigations conducted by third-party law enforcement agencies into allegations

of misconduct and/or violations of law by OLD-PD officers, supervisors, or commanders, or to properly initiate or conduct investigations of OLD-PD officers, supervisors, or commanders suspected of misconduct and/or violations of law, and instead tolerating misconduct by officers and mistreatment of members of the public;

d.  Failing to keep accurate and reasonable records of incidents involving allegations of police misconduct and of the investigation, handling, and resolution of allegations of police misconduct, in order to avoid public scrutiny and accountability;

e.  Failing to keep accurate and reasonable records of incidents of OLD-PD officers' uses of force and of the investigation and any corrective action of incidents of uses of force;

f.  Failing to provide adequate supervision, discipline, monitoring, or control of OLD-PD officers, including named Defendants;

g.  Failing to adequately hold supervisory or command officers responsible for the misconduct of their subordinates;

h.  Condoning, approving, and authorizing a culture and environment within OLD-PD, and the policing authorities of the SLFPA-E generally, in which personnel, including Defendants herein, had the reasonable belief or expectation that their actions would not be properly monitored by supervisory or command officers and that their misconduct and/or unlawful actions would not be thoroughly investigated or addressed, but rather would be condoned and tolerated;

i.   Failing to properly screen before hiring and failing to properly supervise, discipline, monitor, or control OLD-PD officers under their jurisdiction and control, including named Defendants;

j.   Failure to maintain bias-free policing, particularly in authorizing, permitting, ratifying, and condoning policies, practices, customs, and procedures whereby African-Americans have been harassed, intimidated, disrupted, and suffered interference with their constitutionally-protected activities involving the rights to life, liberty, speech, expression, association, locomotion, travel, and privacy;

k.   Failing to conduct appropriate pre-service training, in-service training, re-training, or enhanced supervision of officers who were known to or suspected to have engaged in misconduct but for whom disciplinary actions were not available;

l.   Failing to reasonably or appropriately monitor civil litigation or police misconduct revealed through criminal and/or administrative proceedings so as to take corrective and/or disciplinary action when necessary, including the actions of the named Defendants;

m.  Failing to keep accurate or easily accessible records of the amount of money spent by SLFPA-E, the Lakefront Management Authority, and other entities in defending, settling, and paying judgments in litigation involving misconduct by OLD-PD personnel, so as to avoid accountability and scrutiny of OLD-PD officer misconduct;

n.   Failing to properly operate, maintain, and staff an adequate early warning system to identify OLD-PD personnel who engage in patterns of improper behavior or violations of citizens' rights, or who have/develop emotional or psychological

conditions which could lead to violations of citizens' rights, and to institute appropriate monitoring, supervision, training, or intervention regarding said personnel.

### III. The City of New Orleans Failed in its Obligation to Ensure That Law Enforcement Within Its Jurisdiction Engaged in Constitutional Conduct

75. As a municipality, the City of New Orleans has inherent power to ensure the safety of members of the public. This obligation extends to ensuring that law enforcement entities operating within the City do not pose a risk to members of the public due to lack of training, lack of supervision, inadequate policy guidance, or inadequate hiring practice. None of the powers granted to the SLFPA-E or Lakefront Management Authority by statute or by the Louisiana Constitution diminish the City's obligations or authority to ensure the welfare and safety of the public.

76. Additionally, the City of New Orleans has determined that OLD-PD shall work as partners with NOPD in certain cooperative patrol areas. Despite this, the City has not required OLD-PD to follow the terms of the New Orleans Police Department Consent Decree, adopted by the Court on January 11, 2013. *See United States of America v. City of New Orleans*, E.D. La., 12-cv-1924, ECF No. 2-1; *amended* ECF No. 565.

77. The stated goal of the Consent Decree is to ensure "that police services are delivered to the people of New Orleans in a manner that complies with the Constitution and laws of the United States . . . . The full and sustained implementation of this Agreement is intended to protect the constitutional rights of all members of the community, improve the safety and security of the people of New Orleans, and increase public confidence in the New Orleans Police Department." E.D. La., 12-cv-1924, ECF No. 565 at 6.

78.     Further, the NOPD Consent Decree "is binding upon all Parties hereto, by and through their officials, agents, employees, and successors. If the City establishes or reorganizes a government agency or entity whose functions include overseeing, regulating, accrediting, investigating, or otherwise reviewing the operations of NOPD or any aspect thereof, the City agrees to ensure these functions and entities are consistent with the terms of this Agreement and shall incorporate the terms of this Agreement into the oversight, regulatory, accreditation, investigation, or review functions of the government agency or entity as necessary to ensure consistency." E.D. La., 12-cv-1924, ECF No. 565 at 8.

79.     The City of New Orleans has undermined the terms of the NOPD Consent Decree and failed to ensure the welfare and safety of the public by allowing collaboration and cooperation with a patrolling law enforcement entity in the City (OLD-PD) with an entirely separate chain of command that does not abide by the NOPD Consent Decree reforms. NOPD's and the City of New Orleans' roles in the investigations of uses of force by OLD-PD's officers similarly undermine the reform efforts codified in the NOPD Consent Decree as such investigations lacks any structure to ensure officer accountability and/or corrective action.

80.     The discrepancies between the policies enacted by the City under the Consent Decree and those by the SLFPA-E, Lakefront Management Authority, and/or OLD-PD are significant. The NOPD Consent Decree recognizes the extreme danger inherent in shooting a moving vehicle, and prohibits such uses of firearm unless the occupants are using deadly force, other than the vehicle itself:

> Officers shall not discharge a firearm from a moving vehicle or at a moving vehicle unless the occupants of the vehicle are using deadly force, other than the vehicle itself, against the officer or another person, and such action is necessary for self-defense or to protect the other person; shall not intentionally place themselves in the path of, or reach inside, a moving vehicle; and, where possible, shall

> attempt to move out of the path of a moving vehicle before
> discharging their weapon. E.D. La., 12-cv-1924, ECF No. 565 at 22.

81.    Additionally, the NOPD Consent Decree prohibits officers from intentionally placing themselves in the path of a moving vehicle. And officers are limited in when they may even draw their firearms.

82.    The City of New Orleans had opportunity to enforce the constitutional requirements embodied in the Consent Decree in its investigations into OLD-PD officers' conduct, but failed to do so. What investigation there was into Officer Biggs' shooting of Jevin Williams was conducted by NOPD, and perpetuates the City's failures. This investigation is rife with contradictions and questionable investigative procedures. First, Officer Biggs did not give his statement until three days after the shooting, after he had an opportunity to consult with his lawyer (and possibly others) and develop his story. Second, several of Officer Biggs' statements are contradicted by video evidence in the possession of NOPD: notably, contrary to his statement, video shows that Biggs failed to approach the car to check on the medical condition of the two people he had just shot at four times, as well as showing that the Camaro was never headed straight toward him and had turned past him when he fired at Hampton and Williams, resulting in Biggs shooting Williams in the left side and Hampton in the rear left arm; the driver's side window of the Camaro was shot through and broken out. Finally, the NOPD investigation report notes that the Camaro's tire tracks confirm that the car was never moving in a straight direction forward, but rather reflect that the car immediately curved away from Biggs and his vehicle. Despite this evidence, the NOPD investigative report finds the shooting justified based "solely" on Biggs' "perception that he was in imminent danger of being struck by the vehicle." This decision to ignore evidence in favor of an officer's story developed in the three days between a shooting and questioning is at odds with NOPD's obligations under the Consent Decree.

## CLAIMS FOR RELIEF

### COUNT ONE

### VIOLATION OF THE FOURTH AMENDMENT'S PROHIBITION ON EXCESSIVE FORCE, PURSUANT TO 42 U.S.C. § 1983 (BIGGS)

83.     Plaintiff incorporates by reference the allegations previously set forth in this complaint.

84.     Officer Biggs used unnecessary, unreasonable, and excessive force against Williams, depriving Williams of rights, privileges, and immunities secured to him by the Fourth Amendment to the United States Constitution.

85.     Biggs' use of force against Williams constituted a seizure.

86.     At all times, Biggs was acting under color of law and was aware that uses of force without justification and/or legal cause are unlawful.

87.     Biggs, in his individual capacity, is liable to Williams for violation of his Fourth Amendment rights, pursuant to 42 U.S.C. § 1983.

### COUNT TWO

### VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT, PURSUANT TO 42 U.S.C. § 1983 (BIGGS)

88.     Plaintiff incorporates by reference the allegations previously set forth in this complaint.

89.     Officer Biggs used unnecessary, unreasonable, and excessive force against Williams, depriving Williams of rights, privileges, and immunities secured to him by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

90.     At all times, Biggs was acting under color of law and was aware that uses of force without justification and/or legal cause are unlawful.

91.     Biggs' conduct shocked the conscience and was so brutal and offensive that it did not comport with traditional ideas of fair play and decency. Biggs' conduct intended to injure Williams in a way unjustifiable by any legitimate government interest.

92.     Biggs, in his individual capacity, is liable to Williams for violation of his Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983.

## COUNT THREE

### FAILURE TO TRAIN, SUPERVISE, AND DISCIPLINE OFFICER BIGGS, PURSUANT TO 42 U.S.C. § 1983

### (SLFPA-E, LAKEFRONT MANAGEMENT AUTHORITY, NAJOLIA, JUNEAU, PELLITTERI, BRENCKLE, MASON, AND BIENIEMY IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES)

93.     Plaintiff incorporates by reference the allegations previously set forth in this complaint.

94.     Defendants named in this Count, acting individually and together, under color of law, acted to violate Jevin Williams' rights to due process of law and to be free from excessive force protected under the Fourth and Fourteenth Amendments.

95.     Defendants SLFPA-E, Lakefront Management Authority, and Najolia in their official capacities, and Defendants Najolia, Juneau, Pellitteri, Brenckle, Mason, and Bieniemy in their individual capacities, failed to train and/or supervise their subordinate, namely Daniel Biggs, to ensure that this subordinate did not violate members of the public's rights protected under the Fourth and Fourteenth Amendments. This failure to train and/or supervise was a moving force behind the excessive use of force by Biggs in shooting Jevin Williams. At all pertinent times herein, Defendants SLFPA-E, Lakefront Management Authority, Najolia, Juneau, Pellitteri, Brenckle, Mason, and Bieniemy were aware of the need to supervise, train, investigate, and discipline their subordinates in order to ensure that they did not violate the rights of members of

the public. These Defendants ignored that need and acted unreasonably and with deliberate indifference and disregard for Jevin Williams' constitutional rights as described above.

96.     As final policymakers, SLFPA-E, Lakefront Management Authority, and Najolia in their official capacities, and Najolia, Juneau, Pellitteri, Brenckle, and Mason, in their individual capacities, acting individually and together, violated Jevin Williams' constitutional rights by establishing and maintaining policies, customs, usages, practices, and procedures that they knew would deprive members of the public, including Jevin Williams, of their constitutional rights protected under the Fourth and Fourteenth Amendments.

97.     Further these Defendants failed to establish and maintain policies to ensure constitutional police conduct, and these Defendant knew or should have known that such failures would deprive members of the public, including Jevin Williams, of their constitutional rights under the Fourth and Fourteenth Amendments.

98.     These policies, customs, usages, practices, and/or procedures were a moving force in the unlawful shooting of Jevin Williams. At all pertinent times herein, Defendants SLFPA-E, Lakefront Management Authority, Najolia, Juneau, Pellitteri, Brenckle, and Mason were aware that the policies, procedures, practices, customs, and usages they established (or failed to establish) for OLD-PD would result in violations of constitutional rights. These Defendants ignored that risk and acted unreasonably and with deliberate indifference to Jevin Williams' constitutional rights as described above.

99.     At all pertinent times, Defendants named in this Count, individually and collectively, were acting under color of law and in the course and scope of their employment. Defendants named in this Count acted unreasonably, recklessly, and with deliberate indifference

and disregard for the safety and constitutional rights of Williams by failing to prevent the misconduct of officers under their command.

## COUNT FOUR

### FAILURE TO TRAIN, SUPERVISE, AND DISCIPLINE OFFICER BIGGS, PURSUANT TO 42 U.S.C. § 1983

### (CITY OF NEW ORLEANS IN ITS OFFICIAL CAPACITY)

100.   Plaintiff incorporates by reference the allegations previously set forth in this complaint.

101.   Defendant named in this Count, acting under color of law, violated Jevin Williams' rights to due process of law and to be free from excessive force protected under the Fourth and Fourteenth Amendments.

102.   Defendant City of New Orleans, in its official capacity, failed to train, supervise, investigate, and discipline officers under its supervision, including officers of OLD-PD, to ensure that these officers did not violate members of the public's rights protected under the Fourth and Fourteenth Amendments. Jevin Williams was directly harmed by these failures because they were a moving force in the excessive use of force by Biggs in shooting Jevin Williams. At all pertinent times herein, the City of New Orleans was aware of the need to supervise, train, investigate, and discipline officers patrolling in the City to ensure that they did not violate the rights of members of the public. This Defendant ignored that need and acted unreasonably and with deliberate indifference and disregard for Jevin Williams' constitutional rights as described above.

103.   At all pertinent times, Defendant named in this Count, individually and collectively with other Defendants named in this action, was acting under color of law. Defendant named in this Count acted unreasonably, recklessly, and with deliberate indifference and disregard for the

safety and constitutional rights of Williams by failing to prevent the misconduct of officers patrolling in the City of New Orleans.

## COUNT FIVE

### ESTABLISHMENT OF A SYSTEM IN WHICH UNCONSTITUTIONAL POLICING WAS PERMITTED WITHIN THE CITY OF NEW ORLEANS, PURSUANT TO 42 U.S.C. § 1983

### (CITY OF NEW ORLEANS IN ITS OFFICIAL CAPACITY)

104.    Plaintiff incorporates by reference the allegations previously set forth in this complaint.

105.    Defendant named in this Count, acting individually and collectively with other Defendants named in this action, under color of law, violated Williams' right to due process of law and right to be free from excessive force as protected by the Fourth and Fourteenth Amendments to the United States Constitution. It did so by permitting and engaging in cooperative patrolling areas with OLD-PD without requiring OLD-PD to abide by policies and requirements for constitutional policing as outlined in the NOPD Consent Decree and without engaging in proper oversight of OLD-PD.

106.    At all pertinent times, the City of New Orleans acted unreasonably, recklessly, and with deliberate indifference and disregard for the safety and constitutional rights of Williams by failing to provide oversight of and/or to enforce requirements for constitutional policing on an entity it tasked with patrol duties in the City of New Orleans (OLD-PD). The City of New Orleans knew that such practice would result in the persistence of unconstitutional police practices in the City beyond those determined to be constitutional under the Consent Decree.

107.    This practice was a moving force in the unlawful shooting of Jevin Williams by Officer Biggs.

## COUNT SIX

### *MONELL* VIOLATION OF WILLIAMS' CIVIL RIGHTS BASED ON POLICIES, PATTERNS, OR PRACTICES THAT SUBJECTED MEMBERS OF THE PUBLIC TO EXCESSIVE USES OF FORCE, PURSUANT TO 42 U.S.C. § 1983

### (SLFPA-E, LAKEFRONT MANAGEMENT AUTHORITY, AND CITY OF NEW ORLEANS IN THEIR OFFICIAL CAPACITIES)

108.    Plaintiff incorporates by reference the allegations previously set forth in this complaint.

109.    Defendants named in this Count, the SLFPA-E, Lakefront Management Authority, and the City of New Orleans, acting individually and together, under color of law, violated Williams' right to be free from unconstitutional seizure and excessive use of force and his right to due process and equal protection of the laws as protected by the Fourth and Fourteenth Amendments of the United States Constitution.

110.    They did so by establishing and maintaining insufficient policies, patterns, customs, trainings, or practices that they knew would fail to prevent excessive uses of force against members of the public. On information and belief, there was a policy, pattern, and/or practice of OLD-PD officers engaging in unjustified, unreasonable, and excessive uses of force and verbal and physical abuse of members of the public. Further, on information and belief, there was a pattern and/or practice of failing to adequately, promptly, and properly investigate misconduct and discipline officers for infractions of policy and constitutional rights. Finally, on information and belief, there was a pattern and/or practice of failing to establish adequate policies and/or of maintaining inadequate policies. All of these patterns and/or practices resulted in known deficiencies in training, supervision, and policy, which resulted in acts of unconstitutional policing.

111.    Williams was individually harmed by these policies, patterns, and/or practices because they resulted in his shooting by OLD-PD Officer Biggs.

112.    At all pertinent times, Defendants named in this Count, individually and collectively, acted unreasonably, recklessly, and with deliberate indifference and disregard for the safety and constitutional rights of Williams by establishing the above-described policies, patterns, or practices.

113.    The above-named Defendants are therefore liable to Williams for the violation of constitutional rights described above pursuant to *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978).

## COUNT SEVEN

### SUPPLEMENTAL STATE LAW CLAIM FOR ASSAULT AND BATTERY RESULTING IN INJURY TO JEVIN WILLIAMS

### (BIGGS, NAJOLIA, BRENCKLE, SLFPA-E, AND LAKEFRONT MANAGEMENT AUTHORITY)

114.    Plaintiff incorporates by reference the allegations previously set forth in this complaint.

115.    Biggs intended to inflict a harmful or offensive contact upon Williams in the process of seizing him by opening fire on him. The seizure and detention of Williams was unjustified by legal authority. Thus, Biggs committed the intentional torts of assault and battery.

116.    Biggs was acting under color of law and in the course and scope of his employment at all times relevant to this claim.

117.    As a direct and proximate result of Biggs' misconduct, Williams suffered damages, including bodily injury, pain, suffering, severe mental and emotional distress, anguish, humiliation, loss of liberty, and loss of income, as set forth more fully above.

118.    Defendants Najolia, Brenckle, SLFPA-E, and the Lakefront Management Authority are liable for the intentional torts described in paragraph 115 under the doctrine of *respondeat superior* because they maintained the employ and were responsible for the supervision of Defendant Officer Biggs. Pursuant to Louisiana Civil Code art. 2320, "employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed."

119.    At all times pertinent herein, these Defendants, individually and collectively, acted intentionally, maliciously, recklessly, and/or negligently toward Williams.

## COUNT EIGHT

### SUPPLEMENTAL STATE LAW CLAIMS FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS RESULTING IN INJURY TO JEVIN WILLIAMS

### (BIGGS, NAJOLIA, BRENCKLE, SLFPA-E, AND LAKEFRONT MANAGEMENT AUTHORITY)

120.    Plaintiff incorporates by reference the allegations previously set forth in this complaint.

121.    Biggs' shooting of Williams was extreme and outrageous conduct that caused Williams severe emotional distress. Biggs knew or should have known that such distress would be the outcome of his actions and therefore is liable for the intentional infliction of emotional distress. In the alternative, Biggs is liable for negligent infliction of emotional distress.

122.    Biggs was acting under color of law and in the course and scope of his employment at all times relevant to this claim.

123.    As a direct and proximate result of the Biggs' misconduct, Williams suffered damages, including bodily injury, pain, suffering, severe mental and emotional distress, anguish, humiliation, loss of liberty, and loss of income, as set forth more fully above.

124.     Defendants Najolia, Brenckle, SLFPA-E, and the Lakefront Management Authority are liable for the intentional tort described in paragraph 121 under the doctrine of *respondeat superior* because they maintained the employ and were responsible for the supervision of Defendant Officer Biggs. Pursuant to Louisiana Civil Code art. 2320, "employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed."

125.     At all times pertinent herein, these Defendants, individually and collectively, acted intentionally, maliciously, recklessly, and/or negligently toward Williams.

## COUNT NINE

### DIRECT ACTION AGAINST INSURER PURSUANT TO LA. R.S. 22:1269

### (ABC INSURANCE COMPANY AND XYZ INSURANCE COMPANY)

126.     At all applicable times, Defendants ABC Insurance Company and XYZ Insurance Company afforded liability coverage to SLPFA-E and Lakefront Management Authority respectively and/or other Defendants. Accordingly, ABC Insurance Company and XYX Insurance Company are each liable to Williams for the intentional and/or negligent acts of other Defendants.

WHEREFORE, Plaintiff Jevin Williams requests that this Court enter judgment against Defendants and issue the following relief:

    a.  a declaratory judgment that Defendants violated Williams' constitutional rights;

    b.  a declaratory judgment that Defendants caused the assault and battery and intentional infliction of emotional distress on Williams;

    c.  an award of damages in an amount to be determined, including as available and proper, any nominal or punitive damages;

    d.  an order and judgment granting reasonable attorney's fees and costs incurred pursuant to 42 U.S.C. § 1988; and

    e.  any relief that this Court deems just and proper.

Respectfully submitted,

*/s/ Emily Washington*
Emily M. Washington, La. Bar No. 34143, T.A.
Hannah Lommers-Johnson, La. Bar No. 34944*
Elizabeth Cumming, La. Bar No. 31685
Roderick & Solange MacArthur Justice Center
4400 S. Carrollton Ave.
New Orleans, LA 70119
(504) 620-2259 (p)
(504) 208-3133 (f)
emily.washington@macathurjustice.org

*Attorneys for Plaintiff Williams*

*E.D. La. Admission Pending