UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JEVIN WILLIAMS** | **CIVIL ACTION** |
| **VERSUS** | **NO: 21-333 C/W 21-334** |
| **DANIEL BIGGS, ET AL.** | **SECTION: "H"** |

## ORDER AND REASONS

Before the Court is Defendants' Motion for Summary Judgment (Doc. 103). For the following reasons, the Motion is **GRANTED IN PART**.

## BACKGROUND

This consolidated case arises out of the shootings of Plaintiffs Jevin Williams and Glendale Hampton by Orleans Levee District Police Department ("OLD-PD") Officer Daniel Biggs.[1] On February 16, 2020, Officer Biggs received a report that cars were doing donuts in a parking lot near Lake Pontchartrain. During his investigation into the reckless driving report, Biggs fired four shots into a Camaro occupied by Williams and Hampton, striking both. Plaintiffs have brought claims against Officer Biggs, the Southeast

---

[1] Williams v. Biggs et al., Case No. 21-333; Hampton v. Biggs et al., Case No. 21-334.

1

Louisiana Flood Protection Authority-East ("SLFPA-E"), and several other individual officers.[2] They allege § 1983 violations of their Fourth and Fourteenth Amendment rights and state law tort claims.

In the instant Motion, Officer Biggs moves for a finding of qualified immunity from Plaintiffs' § 1983 and state law claims, arguing that his use of force was objectively reasonable because he believed he was in danger as the vehicle accelerated towards him. The SLFPA-E, Superintendent Kerry Najolia, Captain Michael Brenckle, and Officers Donald Juneau, Albert Pellitteri, Darnell Laurent, Bruno Mason, and Vance Bieniemy also move for dismissal of the § 1983 failure to train and supervise claims against them.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[3] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[4]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[5] "If the moving party meets the initial

---

[2] The Court previously dismissed Plaintiffs' claims against the City of New Orleans, and Plaintiffs voluntarily dismissed their claims against the Lakefront Management Authority.
[3] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).
[4] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[5] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).

burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[6]  Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[7]  "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[8] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[9]  Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[10]

## LAW AND ANALYSIS

The Court will consider each of Defendants' arguments for summary judgment in turn.

**A. Qualified Immunity**

First, Defendants argue that Biggs is entitled to qualified immunity from Plaintiffs' claims. "The doctrine of qualified immunity protects government

---

[6] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[7] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
[8] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[9] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[10] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[11] Plaintiffs have the burden of rebutting "the officers' qualified-immunity defense by establishing a genuine fact issue as to whether the officers' allegedly wrongful conduct violated clearly established law."[12]

> In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first asks whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right. . . . The second prong of the qualified-immunity analysis asks whether the right in question was clearly established at the time of the violation.[13]

In cases alleging excessive force, "the second prong of the analysis is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of [the] then clearly established law."[14]

To prevail on a claim for excessive force under the Fourth Amendment, Plaintiffs must show: "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable."[15] "Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on

---

[11] Griggs v. Brewer, 841 F.3d 308, 312 (5th Cir. 2016) (internal quotation omitted).
[12] Rockwell v. Brown, 664 F.3d 985, 991 (5th Cir. 2011).
[13] Tolan v. Cotton, 572 U.S. 650, 655 (2014) (internal quotations and alterations omitted).
[14] *Griggs*, 841 F.3d at 313 (internal citation omitted).
[15] Flores v. City of Palacios, 381 F.3d 391, 396 (5th Cir. 2004).

4

the facts and circumstances of each particular case."[16] In *Graham v. Connor*, the Supreme Court set forth factors to consider in determining whether a use of force was reasonable: (1) the "severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," (3) and "whether he is actively resisting arrest or attempting to evade arrest by flight."[17] "While all factors are relevant, the threat-of-harm factor typically predominates the analysis when deadly force has been deployed. The reasonableness is judged from the perspective of a reasonable officer on the scene, and only the facts then knowable to the defendant officers may be considered."[18] That said, the standard is one of objective reasonableness and is not subjective, as Biggs suggests.[19]

Officer Biggs contends that his use of force was reasonable because he perceived an immediate threat as Hampton's car accelerated toward him. He contends that he received a report that cars were doing donuts in a parking lot near Lake Pontchartrain. It is undisputed that Hampton was in the driver's seat and Williams was in the passenger seat of a Camaro parked in the lot. Upon entering the parking lot, Biggs stopped his vehicle in front of and partially blocking the parking space occupied by the Camaro. Biggs testified that he activated his lights, exited his vehicle, and asked the driver to stop. He

---

[16] Deville v. Marcantel, 567 F.3d 156, 167 (5th Cir. 2009).
[17] Graham v. Connor, 490 U.S. 386, 396 (1989).
[18] Crane v. City of Arlington, Texas, 50 F.4th 453, 463 (5th Cir. 2022).
[19] *Graham*, 490 U.S. at 397 ("[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.").

alleges that as he was standing in front of the Camaro, it accelerated forward toward him. He contends that at that point he was in fear for his life, and he fired four shots at the driver of the vehicle. He testified that as he was shooting, the vehicle fishtailed to the side, and he was "still in danger of the side and the back of the vehicle hitting" him.[20] He testified that he stopped shooting after the vehicle was no longer a danger to him.

In support of his version of events, Officer Biggs presents the police report from the incident, which was prepared by another officer who arrived on the scene after the shooting. The report includes the account of an eyewitness who was sitting in another car in the parking lot. The eyewitness stated that the Camaro attempted to hit the officer. The eyewitness also spoke with Sgt. Clinton Givens, an investigator with the New Orleans Police Department's Force Investigation Team ("FIT"), who prepared the FIT report associated with the incident. Sgt. Givens concluded in his report that Biggs was justified in his use of force because of his perception that he was in imminent danger of being struck by the vehicle driven by Hampton.[21]

On the other hand, Plaintiffs allege that Hampton did not drive straight toward Biggs. Instead, they allege that Hampton was attempting to exit the parking lot and turned his car immediately to the right to drive around the rear of Biggs's vehicle, which was partially blocking the space in which the Camaro was parked. They allege that the front of the Camaro had passed the rear of the police vehicle before Biggs began shooting, and he therefore could

---

[20] Doc. 103.
[21] Significantly, Sgt. Givens did not find that Hampton accelerated toward Biggs, but rather, that in attempting to flee, he began to spin out and lose control of the vehicle and that Biggs believed the vehicle was going to strike him.

not have reasonably feared for his safety. Both Plaintiffs testified that Biggs never gave them an instruction to stop.

In support of their version of events, Plaintiffs also point to portions of Sgt. Givens's FIT report. First, Sgt. Givens points out that the tire tracks from Hampton's vehicle "did not indicate that the vehicle ever moved in a straight direction forward. The tracks immediately curved north and then west as the vehicle spun out of control."[22] Givens also did not find that Hampton accelerated toward Biggs, but rather, that Biggs believed the vehicle was going to strike him as it began to spin out and lose control.[23] Next, Plaintiffs point to the location of the bullet holes in the car and in their bodies as supporting evidence that Biggs was not in danger. Crime scene photographs reflect that all of the bullets that Biggs fired hit either the far edge of the driver's side windshield or through the driver's window of the car. Hampton was shot in the back, upper left arm, and Williams was shot in the left torso. Plaintiffs argue that this suggests that the car was turning away from Biggs at the time of the shooting. Next, Plaintiffs provide a video of the incident taken by an eyewitness from an adjacent parking lot approximately 300 feet away.[24] The

---

[22] Doc. 118-4 at 21.
[23] *Id.*
[24] Defendants object to the video as not being competent summary judgment evidence. Under Rule 56, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56. Defendants argue that Plaintiffs will be unable to authenticate the video at trial because the individual who recorded the video resides outside of the subpoena power of the Court. They also complain that Plaintiffs have not shown that the video accurately reflects when the audio of the gun shots occurred relative to the movement of the vehicle on the video. The Fifth Circuit has explained that "[a]t the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form. . . . [M]aterials cited to support or dispute a fact need only be *capable* of being presented in a form that would be admissible in evidence." Maurer v. Indep. Town, 870 F.3d 380, 384 (5th Cir. 2017). "There is nothing to compel a conclusion" that the video "is not capable of being admitted at an eventual trial."

video—although poor quality and from a distance—supports Plaintiffs' contention that Hampton had turned the vehicle to get around Biggs's police vehicle and had cleared the rear of Biggs's car before Biggs began shooting.

Given the evidence presented by Plaintiffs, there is a clear issue of material fact regarding whether Plaintiffs' vehicle accelerated toward Biggs and whether Biggs reasonably perceived an immediate threat. Plaintiffs have provided evidence upon which a jury could reasonably find that Biggs's perception of an immediate threat was not reasonable.[25] "When two conclusions are plausible, at the summary judgment stage, we must accept as true that which is most favorable to the nonmovant."[26] Accordingly, taking together the assumptions that Plaintiffs were attempting to flee the parking lot to evade arrest, were under suspicion of reckless driving—a relatively minor crime—and Biggs was not in immediate harm, a jury could reasonably find that the degree of force used by Biggs was not reasonable.

The second step of the qualified immunity inquiry asks whether the violated constitutional right was clearly established at the time of the violation. "It has long been clearly established that, absent any other justification for the use of force, it is unreasonable for a police officer to use deadly force against a fleeing felon who does not pose a sufficient threat of

---

*Id.* Indeed, "authentication is a low burden, requiring only a showing sufficient to support a finding that the item is what the proponent claims it is and a video's own distinctive characteristics might overcome it." Smith v. Lopez, 519 F. Supp. 3d 395, 405 (W.D. Tex. 2021). Even so, the Court finds that Plaintiffs have presented sufficient additional evidence to overcome summary judgment even without the video.

[25] *See* Poole v. City of Shreveport, 13 F.4th 420, 425 (5th Cir. 2021) ("It is a case in which [video] evidence the Supreme Court has recognized as especially compelling could be viewed as contradicting the officer's testimony.").

[26] *Crane*, 50 F.4th at 462.

harm to the officer or others."[27] Accordingly, "because the facts seen in a light most favorable to [Plaintiffs] indicate a violation of a clearly established right and material facts are in dispute," summary judgment on qualified immunity is denied. [28]

### B. Failure to Train, Supervise and Discipline

Next, Plaintiffs bring claims against SLFPA-E and Superintendent Najolia in his official capacity, as well as Najolia and Officers Juneau, Pellitteri, Laurent, Brenckle, Mason, and Bieniemy in their individual capacities for failure to train, supervise, and discipline Officer Biggs. This Court will outline Plaintiffs' claims and the evidentiary support thereto before considering whether Plaintiffs' claims survive summary judgment.

#### i. *Failure to Train*

In support of their failure to train claims, Plaintiffs present the following arguments.[29] First, Plaintiffs contend that there was a three-year period of time in which there was no training coordinator at the OLD-PD. Plaintiffs also argue that the OLD-PD only hired officers that were already POST certified and did not offer any additional training to new hires besides emailing the policy manual and requiring some officers to meet with human resources. They

---

[27] *Id.* at 466.
[28] *Id.* at 467.
[29] Plaintiffs also argue that they cannot completely respond to Defendants' request for dismissal of their supervisory liability and *Monell* claims because Defendants have failed to produce all discovery. Plaintiffs' Motion contends that they are awaiting the resolution of a pending Motion to Compel in order to fully set forth evidence of their claims. The Motion to Compel, however, was denied as moot after Defendants produced more documents. Despite this additional production, Plaintiffs have not sought to supplement their response to Defendants' Motion for Summary Judgment, which has been pending for more than six months. Accordingly, this Court assumes that Plaintiffs have presented all relevant evidence in support of their claims.

9

argue that the OLD-PD's Field Training Officer (FTO) program is flawed where there is no oversight for recommendations from other officers that a new hire is ready for solo patrol. Rather, Plaintiffs argue, one officer's subjective opinion is sufficient to allow a new hire to begin a solo patrol. Plaintiffs also maintain that OLD-PD officers were improperly instructed as to when they may use force. Plaintiffs argue that the lack of training and improper guidance on the use of force resulted in Officer Bigg's improper understanding of when he could use force. Specifically, Plaintiffs note that Officer Biggs testified that he was instructed that he could use force when he "deemed it necessary."[30] Plaintiffs also contend that Officer Biggs did not receive any training on firearm decision-making skills. Plaintiffs argue that Officer Biggs's lack of training on and understanding of when deadly force is appropriate was a moving force behind the shooting of Plaintiffs.

The evidence presented by Plaintiffs does not, however, bear out these allegations. First, Plaintiffs do not present any evidence supporting the allegation of a three-year period in which there was no training coordinator at the OLD-PD. Instead, the testimony reveals that Officer Darnell Laurent began serving as the training coordinator after Officer Sue Egan retired.[31] Officer Laurent testified that, as training coordinator, he sent quarterly reminders to the OLD-PD officers regarding mandatory training hours. Laurent also testified that the policy manual was given to new hires in both email and paper forms and that new hires were required to sign and acknowledge that they had received and understood the policy.

---

[30] Doc. 118-2 at 11.
[31] Doc. 103-11 at 8.

As for the FTO program, Lieutenant Pellitteri, the program coordinator, testified that he reviewed daily observation reports and weekly reports prepared by FTOs for each new recruit and met with the FTO to make a recommendation regarding release to solo patrol. Superintendent Najolia confirmed that a FTO would make a recommendation regarding a new hire's readiness for solo patrol to his sergeant and lieutenant and "if both of those sign off—because they are monitoring them, reading the reports, and approving the reports, and watching his behavior and stuff. Then the lieutenant would sign off and send it to the district commander for approval for solo patrol. Once the captain approved, then the individual was allowed to solo patrol."[32] Even Captain Juneau testified that he reviewed the evaluations of reserve officers going through the FTO program.[33] Accordingly, the testimony does not support Plaintiffs' contention that recommendations for solo patrol were based on "one FTO's subjective opinion."[34]

Finally, Plaintiffs mischaracterize Officer Biggs's testimony regarding his understanding of use of force. Read in its totality, Officer Biggs explained that he was instructed to "use the least amount of force possible and move up the use-of-force ladder" and that deadly force should only be used when the officer or a member of the public's life is in immediate danger.[35] The testimony of other officers regarding their training on the use-of-force policy is consistent with this understanding.[36] Officer Biggs also outlined the firearms training he

---

[32] Doc 118-10 at 12.
[33] Doc. 103-11 at 5.
[34] Doc. 118 at 34.
[35] Doc. 118-2 at 12.
[36] *See* Docs. 118-7 at 7 (Testimony of Captain Brenckle); 103-12 at 12 (Testimony of Superintendent Najolia).

11

received, and Lieutenant Laurent described the firearms decision-making course that he instructed.[37] Accordingly, Plaintiffs have not presented evidence that supports their claims of lack of training.

### ii. *Failure to Supervise and Discipline*

As to their claims of failure to supervise and discipline, Plaintiffs argue that, as a reserve officer, it is unclear who was supervising Officer Biggs. While Officer Biggs testified that his supervisor was Captain Donald Juneau, Juneau testified that he did not have direct responsibility over any other officer. As a reserve officer, Biggs was supervised by the shift lieutenant and sergeant for the shift on which he was working on any given day. But, Plaintiffs argue, the shift lieutenant on the day of the shooting at issue here testified that he simply assigned Biggs an area to patrol but did not serve as an immediate supervisor. Further, Plaintiffs argue that the OLD-PD has no formal use-of-force review process and therefore no disciplinary process to correct problems with uses of force.

Here again, Plaintiffs cherry-pick testimony in support of their arguments. The testimony makes clear that Captain Juneau supervised Officer Biggs for administrative purposes, but that the lieutenant and sergeant of the platoon on watch at the time that he volunteered supervised him for that shift.[38] The officers also testified that use-of-force reports are filled out for all use-of-force incidents and reviewed by the platoon sergeant, the platoon lieutenant, the captain, the superintendent, and the legal department.[39] Captain Brenckle testified that he reviewed the use-of-force reports for the

---

[37] Doc. 118-8 at 9.
[38] Docs. 118-11 at 8, 103-9 at 3, 103-12 at 9.
[39] Doc. 103-15 at 13–14.

12

"legitimacy of the use of force used."[40] There is also evidence that Captain Brenckle, Superintendent Najolia, and Lieutenant Laurent met with Officer Biggs to discuss the shooting at issue here and determined that his actions were consistent with department policy and training.[41] Accordingly, here again, the evidence presented does not support Plaintiffs' allegations of a failure to supervise.

### iii.   *Officers in their Individual Capacities*

Under § 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."[42] "Rather, a plaintiff must show either that the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation."[43] "When, as here, a plaintiff alleges a failure to train or supervise, the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference."[44] The Fifth Circuit has frequently held that supervisor liability "requires a showing of the supervisor's deliberate indifference to the known or obvious fact that such constitutional violations would result and that generally requires that a plaintiff demonstrate at least a pattern of similar violations."[45] "For an official to act with deliberate indifference, the official

---

[40] Doc. 103-15 at 13.
[41] Docs. 103-15 at 16–17, 118-8 at 12–13.
[42] Hobart v. Estrada, 13-20022, 2014 WL 4564878 (5th Cir. 2014).
[43] Rios v. City of Del Rio, Tex., 444 F.3d 417, 425 (5th Cir. 2006).
[44] Est. of Davis ex rel. McCully v. City of N. Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005).
[45] *Id.* (internal quotations and alterations omitted).

must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[46] "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity."[47]

Plaintiffs argue that the OLD-PD training and supervision was so insufficient that the risk of constitutional rights violations should have been obvious to Officers Najolia, Juneau, Pellitteri, Laurent, Brenckle, Mason, and Bieniemy. As outlined above, however, the evidence presented to the Court does not support this argument. Plaintiffs also do not show specific conduct by any individual officer that could rise to the level of deliberate indifference. Plaintiffs do not show that any one officer's failure to train or supervise Biggs resulted in the constitutional violation to Plaintiffs, and they do not show that any of the officers was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that he drew that inference.[48] Accordingly, Plaintiffs' claims for § 1983 liability against Officers Najolia, Juneau, Pellitteri, Laurent, Brenckle, Mason, and Bieniemy in their individual capacities are dismissed.

### iv. *Municipal Liability*

Under *Monell*, a plaintiff asserting a § 1983 claim against a municipality must show "(1) the existence of an official policy or custom, (2) a policymaker's actual or constructive knowledge of the policy or custom, and (3) a

---

[46] *Id.*
[47] *Id.*
[48] *Id.*

14

constitutional violation where the policy or custom is the 'moving force.'"[49] To assert a failure-to-train claim, a plaintiff must allege that "1) the [city] failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights."[50] A "pattern of similar constitutional violations by untrained employees is ordinarily required to show deliberate indifference."[51] However, "even absent proof of pattern, deliberate indifference can still be inferred if the factfinder determines that the risk of constitutional violations was or should have been an 'obvious' or 'highly predictable consequence' of the alleged training inadequacy." Courts, however, have found this inference applied in only narrow circumstances. The Fifth Circuit has advised that such an inference is possible only when the municipal entity has failed "to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face."[52]

Here again, the evidence presented to this Court does not support Plaintiffs' claims of municipal liability for failure to train or supervise. Plaintiffs have not shown a pattern of failures in training or supervising officers or a training inadequacy that creates an obvious risk of constitutional violations. To the extent that there are deficiencies in the training and supervision of the OLD-PD officers, they do not rise to this level, and no

---

[49] Pudas v. St. Tammany Par., No. CV 18-10052, 2019 WL 2410939, at *3 (E.D. La. June 7, 2019) (quoting Valle v. City of Houston, 613 F.3d 536, 541–42 (5th Cir. 2010)).
[50] *Id.* at 623.
[51] *Id.*
[52] Littell v. Houston Indep. Sch. Dist., 894 F.3d 616, 624 (5th Cir. 2018).

evidence was presented of deliberate indifference thereto. Plaintiffs' claims of municipal liability against the SLFPA-E and Najolia in his official capacity are dismissed.[53]

### C. Declaratory Judgment

Next, Defendants move to dismiss Williams's claim for declaratory judgment against them. In his Complaint, Williams seeks a declaratory judgment that Defendants have violated his constitutional rights and caused him injury. To "'obtain equitable relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future.'"[54] Defendants argue that Williams he has not shown a risk of future harm. Williams has not responded to this argument, and this Court agrees that he has not shown he is in danger of repeated injury. Accordingly, Williams's claims for declaratory judgment are dismissed.

---

[53] Having dismissed this claim, the Court need not address the parties' dispute regarding whether OLD or SLFPA-E is the proper party. Further, Plaintiffs' claims for punitive damages against the SLFPA-E and Najolia in his official capacity likewise fail. Defendants' Motion correctly pointed out that punitive damages cannot be recovered from a municipality or an officer in his official capacity under § 1983. *See* Broussard v. Lafayette City-Par. Consol. Gov't, 45 F. Supp. 3d 553, 578–79 (W.D. La. 2014) ("It has been thirty-three years since the Supreme Court clearly stated: "we hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983." (citing City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981)). Further, "'an official capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity.' As such, a plaintiff is barred from recovering punitive damages against an official acting in his official capacity." Givs v. City of Eunice, No. 6:05–CV–0788, 2006 WL 1831528, at *1 (W.D.La. 2006) (quoting Kentucky v. Graham, 473 U.S. 159, 165 (1985)).

[54] Kokesh v. Curlee, 422 F. Supp. 3d 1124, 1133 (E.D. La. 2019) (quoting Bauer v. Texas, 341 F.3d 352, 358 (5th Cir. 2003)).

16

**D. State Law Claims**

In addition to the § 1983 claims discussed above, Plaintiffs bring state law claims for assault and battery and intentional infliction of emotional distress against Biggs, and vicarious liability for those claims against Najolia, Brenckle, and SLFPA-E. Defendants move for dismissal of these claims, arguing only that they should be dismissed for the same reasons as the federal claims. Accordingly, for the reasons outlined above, there is a material issue of fact regarding whether Biggs is entitled to qualified immunity. Because Defendants have presented no other argument for dismissal of Plaintiffs' state law claims, they survive.[55]

# CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment is **GRANTED IN PART**. Plaintiffs' § 1983 and *Monell* claims against SLFPA-E and Chief Najolia in his official capacity, as well as Najolia and Officers Juneau, Pellitteri, Laurent, Brenckle, Mason, and Bieniemy in their individual capacities are **DISMISSED WITH PREJUDICE.** Plaintiffs' § 1983 and state law claims against Officer Biggs survive, and summary judgment on qualified immunity is **DENIED**. Plaintiffs' state law claims against Najolia, Brenckle and SLFPA-E survive.

---

[55] Defendants also suggest that the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims after all federal claims are dismissed. Because this Court did not dismiss all federal claims, this argument too fails.

17

New Orleans, Louisiana this 26th day of February, 2024.

_____

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**